# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

IN RE:

LAKE DISTRICT, LLC.,                         Case No. 23-21496-JDL
                                                                     Chapter 11

      Debtor.

## DEBTOR'S MOTION TO APPROVE SALE OF OUTPARCEL LOTS 2, 3 & 4 CONSISTING OF 2.53 ACRES +/- LOCATED ON LAKE DISTRICT DRIVE, LAKELAND, TENNESSEE TO CHICK-FIL-A, INC. OUTSIDE THE ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. § 363

The Lake District, LLC., Debtor In Possession, (herein, the "Debtor" or "Movant") moves this Court for an order approving a sale of the Debtor's property consisting of outparcel Lots 2, 3, and 4 located on Lake District Drive, Lakeland, Tennessee (collectively the "Property") outside the ordinary course of business pursuant to 11 U.S.C. § 363. In support of this motion the Debtor would show to the Court as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §§105, 363, 1106 and 1108, and related statutes and rules, as well as various orders of reference. This is a core proceeding.

### II. BACKGROUND

2. On March 24, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is now operating its business and managing its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  The Debtor is a Delaware limited liability company which owns approximately 160 acres of land at 3536 Canada Road, Lakeland, Tennessee known as The Lake District. The Debtor is developing the Lake District into five premier districts: the inline retail district, the Main Street district, hotel district, outparcel pad sites and office district, and the residential district.

4.  The Lake District property includes 13 outparcel lots designated for retail and commercial development.

5.  TIG Romspen US Master Mortgage, LP ("Romspen") asserts a claim against the Debtor in the approximate amount of $49,446,186.80 which is secured by a first priority deed of trust on the Property.

6.  Magnolia Underground Construction, Inc. has filed a notice of materialman's lien against the Lake District in the approximate amount of $255,017.89. On information and belief, this lien was filed in error against the wrong entity and the notice of lien will be released. Performance Contracting, Inc. has filed a notice of materialman's lien in the approximate amount of $109,128.68. Hamilton-Elles, Inc. has filed a notice of materialman's lien against the Property in the approximate amount of $87,058.83. Linkous Construction Company, Inc. has filed a notice of materialman's lien in the approximate amount of $603,822.39.

7.  There are aggregate scheduled unsecured claims of approximately $ 3, 972, 327.

8.  The Debtor has entered into a real estate contract with Chick-Fil-A, Inc. ("CFA") to sell outparcel lot numbers 2, 3, and 4 comprising approximately 2.53 acres (the "Property") for a gross purchase price of $3,000,000 subject to the terms of that certain Purchase and Sale Agreement dates as of December 16, 2022, as amended by (a) that certain First Amendment to Purchase and Sale Agreement dated as of March 15, 2023; (b) that certain Second Amendment to

2

Purchase and Sale Agreement dated as of March 31, 2023; (c) that certain Third Amendment to Purchase and Sale Agreement dated as of April 18, 203; (d) that certain Fourth Amendment to Purchase and Sale Agreement dated as of May 1, 2023 and (e) that certain Fifth Amendment to Purchase and Sale Agreement dated as of June 8, 2023  (collectively, the "Purchase Agreement"). A copy of the Purchase Agreement and the amendments thereto is attached hereto as **Collective Exhibit 1.**

9.      Pursuant to the Fifth Amendment, CFA shall have the right to holdback the sum of $350,000 to cover the cost of the Debtor's completion of a traffic light which is a condition of the contract. The proceeds of the holdback may be used to reimburse the Debtor for the cost of construction of the traffic light or used by CFA for such purpose. The Fifth Amendment also amends earlier provisions in the original contract with respect to a declaration of restrictive covenants and easement agreement to be made by the Debtor in connection with closing and further provides that upon entry of an order of this Court approving the sale, Romspen shall be deemed to have consented to the restrictive covenants and easement and to the subordination of its lien of any mortgage or security interest to the final covenants and easement, which consent and subordination is intended to assure that the final covenants and easement survives any foreclosure and is not intended to subordinate the lien of Romspen's security interest to any monetary obligations that may arise under the final restrictive covenants and easement.

10.     The  sale  proceeds of $3,000,000 will be distributed as provided herein.

11.     The Debtor has given notice of this motion to all parties on the Matrix, which includes all creditors, lessors, taxing authorities, and regulatory authorities. In addition, the Debtor believes that this proposed sale is not subject to the provisions of Section 7 of the Clayton Act, commonly known as the Hart-Scott-Rodino Act. Accordingly, the Debtor has not given notice to

the Federal Trade Commission as otherwise required by Section 7 of the Clayton Act and 11 U.S.C. § 363 (b)(2).

12. The Debtor prays that, after notice and hearing, the Court enter an order approving the sale of assets pursuant to the Agreement, and that the court order contain the following findings and provisions:

(i) That proper, adequate and sufficient notice of the motion and hearing thereon has been provided in accordance with the Bankruptcy Code and Bankruptcy Rules and that no further notice is necessary;

(ii) That the agreement represents the proper and prudent exercise of the Debtor's business judgment and that the Debtor has advanced sound business reasons for an immediate sale of the Property;

(iii) That any and all objections to this motion have either been withdrawn or overruled;

(iv) That the purchase price represents a fair and reasonable consideration for the purchased assets;

(v) That the approval and consummation of the agreement is in the best interest of the Debtor, its estate, and its creditors;

(vi) That the Agreement was negotiated at arm's length and in good faith;

(vii) That Chick-Fil-A, Inc. or designee, has acted in good faith and is entitled to the protections of § 363(m) of the Bankruptcy Code;

(viii) That the Debtor has obtained all approvals and met all conditions under current applicable non-bankruptcy law to enter into and consummate the Agreement;

(ix) The Agreement is approved and the Debtor, as debtor-in-possession, is authorized to enter into the Agreement, perform all of its obligations under the Agreement;

(x) The proceeds of sale shall be subject to and impressed with the duly perfected first priority security interests and liens of the secured lenders/creditors, and after payment of regular and customary closing costs, commissions and taxes, including customary and usual closing attorneys' fees, and establishment of escrowed funds provided by the Agreement, the net proceeds shall be distributed to allowed secured claims in the order of their priority.;

(xiii) That Chick-Fil-A, Inc. or its designee shall not be deemed the successor to the Debtor and, except as expressly provided in the agreement shall not be responsible for any of the Debtor's liabilities or obligations;

(xiv) That Romspen shall be deemed to have consented to the final restrictive covenants and easement granted to Chick-Fil-A and to the subordination of its mortgage as provided in the Fifth Amendment;

(xv) The approval order shall be a final and appealable order as to which there is no just reason for delay in its implementation, as to which a judgment should be entered immediately and that, for purposes of Fed. R. Bankr. P. 7062, is an order authorizing sale of property of the estate under 11 U.S.C. § 363;

(xvi) Reversal or modification of the approval order on appeal shall not affect the validity of the sale authorized by the approval order unless the approval order has been stayed pending such appeal by the posting of a bond in an amount equal to at least the amount of the purchase price for the assets;

(xvii) The Court shall retain jurisdiction over any and all disputes, claims or causes of action arising between the parties under the Agreement;

WHEREFORE, the Debtor prays that, after a hearing, the Court approve the Purchase and Sale Agreement between the Debtor and Chick-Fil-A, Inc., and that the court award the Debtor such other relief to which they may be entitled.

**GLANKLER BROWN, PLLC**

By /s/   Michael P. Coury
　Michael P. Coury (TN #7002)
　Ricky L. Hutchens (TN #34750)
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
(901) 576-1886
mcoury@glankler.com

Attorneys for The Lake District, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was provided to the parties below and to those parties receiving electronic noticing via the Court's ECF system and to the Court's matrix on this 19th day of June 2023:

All entities on the matrix

/s/ Michael P. Coury

4873-8421-3097, v. 1